[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These actions involve the same parties and were consolidated for trial. The complaint in Docket No. 100376 brought by the plaintiff, Graves Equipment, Inc. (hereinafter "Graves" or "the plaintiff"), is in three counts: the first, alleging a failure to pay for goods and services sold and rendered, the second, alleging a right of replevin to a "540 Loader" and the third, alleging unjust enrichment of the defendant, for goods and services and the retention of possession of the 540 Loader.
The one-count complaint in Docket No. 100943 alleges a right of replevin to the same loader and is virtually identical to the second count of the complaint in Docket No. 100376.
The court heard testimony and received documentary evidence. This case devolves about the credibility of the various witnesses. It is axiomatic that the trier of fact is the sole arbiter of credibility and is free to accept or CT Page 3753 reject all or any part of a witness' testimony.
 I.
In paragraph three of the first count, Graves alleges that it provided parts, labor, shipping and trucking services to the defendant, pursuant to an open account, the terms of which are. . . "2/10, net 30 from invoice date, a finance charge at the legally allowable rate will be charged on past due accounts." This paragraph was admitted by the defendant, and no special defenses were filed.
From the evidence, the court finds the following relevant facts.
Graves is a Massachusetts corporation engaged in the business of selling, leasing and servicing heavy equipment, such as bulldozers, payloaders and the like. The defendant Camputaro, d/b/a American Sand and Gravel, owns and operates a sand, gravel, asphalt and concrete business in Jewett city, Connecticut, and uses loaders in his business.
In the summer of 1989, Graves transported defendant's Hough Loader, Serial No. 1027, a piece of equipment over 25 years old (hereinafter "the old loader") from defendant's place of business in Connecticut to its Massachusetts facility for repair and servicing, returned it to the defendant at the end of July, 1989, and invoiced the defendant for the sum of $15,327.28 on July 31, 1989. Plaintiff's Exhibit B. The court finds this amount fair and reasonable, and there was no credible evidence that this loader failed to operate properly after the repairs and servicing.
The plaintiff then transported an International Harvester Loader, Serial No. 3257 (hereinafter "the new loader") from defendant's Connecticut facility to plaintiff's Massachusetts facility for repairs to its hydraulic system, engine and brakes, and returned it to the defendant September 15, 1989, and invoiced the defendant for $16,499.90. The court finds this amount fair and reasonable, and there was no credible evidence that the plaintiff's repairs and services to this loader were inadequate or defective.
The next summer, on June 7, 1990, the "new loader" CT Page 3754 was again brought to the plaintiff's facility for additional work to its engine, which the plaintiff performed, including a complete overhaul and the installation of a cam shaft, and it was returned to the defendant August 22, 1990; the plaintiff invoiced the defendant $11,922.47 for this work.
According to the defendant, the loader never operated properly after that. This testimony was corroborated by the defendant's expert, Nizen, who opined that the "wet sleeves" in the engine were not installed according to the tolerances required by the manufacturer's specifications, and this failure would allow water and antifreeze (glycol) into the crankcase which would cause the engine to malfunction. Nizen examined the engine, dismantled it, and estimated a cost of $7,000 to rebuild it. The court credits this testimony which is corroborated by the testimony of Mr. Frederick Graves, plaintiff's vice president, who admitted that the manufacturer's manual was not used by his mechanics step by step, but was used for torque specifications. He did not know whether it was used for the "wet sleeve" tolerances, which are critical for this type of engine.
Accordingly, the court finds that this work done by plaintiff on the new loader was defective, and that the plaintiff has not shown that the $11,922.47 invoice for it was fair and reasonable, and therefore, the plaintiff is not entitled to recover for this invoice.
The plaintiff submitted into evidence several other invoices for parts or services supplied to the defendant, which the court finds to be fair and reasonable, as follows:
Exhibit D, for hydraulic system repairs to the "old loader" for $751.63;
Exhibit E, an invoice for $1,085.80;
Also Exhibit 6, an invoice for new tires in the amount of $3,564;
Exhibit H for parts in the amount of $498;
Exhibit I, for steam cleaning and painting in the amount of $2,105.48; CT Page 3755
Exhibit K for hydraulic repairs of a different nature done to the old loader in 1990 in the amount of $2,130.37;
Exhibit L for a "core" in the amount of $458.27;
The court rejects the amount shown in Plaintiff's Exhibit J of $350 as relating to the defective work on the "new loader";
The court finds a credit due the defendant in the amount of $10,000 paid by him toward the open account in 1990.
There is due the plaintiff then, the following sums:
 Repairs, parts, services to old loader $15,327.28 Repairs, parts, services to new loader $16,499.90 Total of Exhibits D, E, G, H, I, K L $11,193.55 Less credit to defendant ($10,000.00) ------------ $33,020.73
Under the circumstances of this case, with respect to the goods and services rendered on the open account, and the plaintiff's failure to properly repair and service the "new loader," on the second occasion, and considering the totality of the circumstances, the court does not deem it appropriate to award prejudgment interest to the plaintiff, and judgment shall therefore enter that the plaintiff recover from the defendant the sum of $33,020.73 on the first count in Docket No. 100376.
 II.
The plaintiff's replevin actions relate to a Dresser 540 loader, which the plaintiff loaned to the defendant at no charge[1] on June 7, 1990, when plaintiff began repairs on defendant's "new loader." When the plaintiff returned the new loader to the defendant at the end of August, 1990, defendant refused to return plaintiff's 540 loader, and has maintained possession of it and used it regularly since. With commendable candor, defendant's CT Page 3756 counsel conceded during oral argument that the 540 loader was owned by the plaintiff, and that the defendant had no right to its possession.
The court, therefore, at the close of the case, on April 7, 1993, ordered that the 540 loader be forthwith returned to the plaintiff and granted the writ of replevin, and reserved decision as to the issue of damages.
From the testimony of the appraiser, Cunha, and that of the plaintiff's vice president, Frederick Graves, which the court finds credible, the court finds that the value of the loader at the time defendant obtained its possession was $60,000; that the loader is now reasonably worth $40,000, a figure between the auction price and the retail price, adjusting for a $2,500 `fix-up' cost; the court therefore concludes that the loader depreciated in the amount of $20,000 while in the possession of the defendant, and therefore finds that the sum of $20,000 is due the plaintiff for such depreciation. Depreciation in value during the period of detention is a proper element of damages in an action for replevin. See Faulkner v. Marineland, 18 Conn. App. 1,2 (1989). As a result of its wrongful detention by defendant after August 31, 1990, plaintiff is also entitled to prejudgment interest on the value of the loader ($60,000) from September 1, 1990 at the rate of 10 percent per annum until April 7, 1993, when the loader was ordered returned to the plaintiff, in the amount of $15,615.08. Interest on the value of the goods replevied should be allowed from the date of wrongful detention. Blakeslee Co. v. Rigo, 94 Conn. 481
(1920).
The court does not find credible plaintiff's claim for loss of use. The plaintiff's vice president testified that the fair market rental value of the 540 loader is between $4,500 — $5,000 per month. No evidence was provided the court as to whether this figure was for short or long term rentals, or, if for short term rentals, what the average periods such a piece of equipment would actually be rented during the course of a year. The court therefore cannot accept even the lower estimate of $4,500 per month as a fair market rental value over a two-and-a-half year period, which, if used, would total approximately $135,000 in rental payments that a reasonable person would pay for a loader worth $60,000 in the first place. CT Page 3757
The claim for the note payment of $57,800[2] made by the plaintiff is not a proper element of damages in the context of this case, and the plaintiff has cited no authority for this claim. This claim therefore has no merit. Nor was there any credible evidence as to the basis of the $1,248.04 claimed in costs attributable to the replevin action. The court also rejects the claim for legal fees as the plaintiff asserts in its trial brief that it is entitled to them, but has provided no statutory, contractual or common law basis to impose attorney's fees upon the defendant in a replevin action.
Accordingly, judgment may enter in Docket No. 100943 for the plaintiff to recover possession of the 540 Loader, Dresser Serial No. 4155, plus damages in the amount of $35,615.08. The second and third counts of the complaint in Docket No. 100376, are therefore dismissed. Costs are taxed in favor of the plaintiff in each case.
Teller, J.